UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES M. DOUCOT,

          Plaintiff,

v.

IDS SCHEER, INC. and IDS SCHEER AMERICAS,
INC.,

          Defendants.

CIVIL ACTION
NO.  1:09-CV-11482

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Charles M. Doucot hereby opposes defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### INTRODUCTION

This action arises out the refusal of defendants IDS Scheer, Inc. and IDS Scheer Americas, Inc. (collectively, the "Defendants") to provide plaintiff Charles M. Doucot ("Mr. Doucot") payments that he is owed pursuant to the express terms of his written agreement with the Defendants based on the Defendants' termination of Mr. Doucot's employment without cause.  Through their motion to dismiss, the Defendants attempt to escape liability for bonus payments promised to Mr. Doucot by forcing him into a Catch-22.  They contend that his claims are not yet ripe for adjudication because he has not yet earned the bonus payments promised. Yet, they also claim that he can _never_ earn a substantial portion of his bonus payments because upon his termination he ceased to be eligible under the bonus plan.  To assert this argument, the Defendants ignore express language in Mr. Doucot's employment agreement that his bonuses were earned as certain milestones were reached.  Accordingly, the Defendants' attempt to dismiss Mr. Doucot's action at this early stage must fail.

With respect to the ripeness issue, as described in detail below, under the express language of the vesting schedule for entitlement to bonus payments that was attached to Mr. Doucot's employment agreement, he had earned more than $350,000 in bonus payments <u>prior to his termination</u>, and those payments were due to him under applicable state law shortly after the date of his discharge.  The Defendants' interpretation of Mr. Doucot's entitlement to bonuses under the agreement is belied by the clear language of the bonus plans and governing state law that provides employees with a "vested contractual entitlement to bonuses for work already performed – not merely a contractual expectation to earn wages in the future."  Therefore, Mr. Doucot has a current entitlement to bonuses, earned as of his termination, pursuant to his breach of contract claims as well as his claim under the Massachusetts Wage Act, which provides for payment of earned compensation on the day of discharge, that is clearly ripe for adjudication.

Furthermore, looking solely to the well-pleaded allegations of Mr. Doucot's complaint viewed in the light most favorable to him, as well as the attached employment agreement containing the bonus plan, it is clear that Mr. Doucot has stated claims for the purpose of Fed. R. Civ. P. 12(b)(6) based on all of the counts averred in his complaint.  The Complaint alleges that Mr. Doucot earned bonus payments prior to his termination, and that the Defendants have breached their agreement with him by refusing to provide him those payments.  The attached agreement contains a vesting schedule that clearly demonstrates that Mr. Doucot "earned" the bonus payments contemplated by the agreement by Mr. Doucot as soon as he reached 70% of each bonus base goal.  In addition, the Complaint alleges that Mr. Doucot achieved benchmark goals under the bonus plans and earned portions of bonus payments.  Because these amounts were definitely determined at the time of his termination and because he was discharged without cause, Mr. Doucot states a claim pursuant to the Massachusetts Wage Act.

For all of these reasons, the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) should be denied in its entirety.

STATEMENT OF FACTS[1]

In May, 2009, Defendants informed Mr. Doucot, who had been employed as Senior Vice President and General Manager of Product Business Americas since 2006, that they were terminating his employment.  See First Amended Complaint ("Complaint"), ¶ 12.  Defendants terminated Mr. Doucot's employment "without cause" pursuant to section 7(d) of the Executive Employment Agreement (the "Agreement")  which obligates Defendants to compensate Mr. Doucot for all earned but unpaid salary, bonuses, benefits, and reimbursements.  Id. at ¶ 13 & Ex. 1, § 7(d).  Section 7(d) of the Agreement additionally requires Defendants to pay Mr. Doucot his salary and benefits for six months following the termination of his employment.  Id.

Mr. Doucot's bonus compensation is particularly described in Exhibit B to the Agreement, which provides for two bonuses:  The Plan Bonus and the Retention Plan 2010.  Id. at Ex. 1, Ex. B.  The specific goals for the annual Plan Bonus are negotiated each year.  Id., Ex. 1, pp. 1-2.  The 2009 Plan Bonus is allocated 10% to the EBITA Group, 30% to the EBITA Region North America, 30% to Revenue ARIS Region North America, 20% to Revenue Consulting Region North America, and 10% to Free Cash Flow Region North America.  See id., "Annual Bonus Payment 2009."  The Plan Bonus vested as follows under the Agreement:

> The allocated bonus base will begin to be earned when more than 70% of the goal has been met (0% bonus at achievement of 70%), will be fully earned when 100% of the goal has been met, will end when more than 130% of the goal has been met (200% bonus achievement at 130%)….

---

[1]      These facts are all as set out in Mr. Doucot's First Amended Complaint.

Id., Ex. B.  The Retention Plan 2010 is based on the Defendants' financial performance and allocated 30% to corporate revenue goals, 30% to EBITA goals, and 40% to product revenue goals.  Id.  Under the Agreement, see id., the allocated Retention Plan 2010 vested as follows:

> The allocated bonus base will begin to be earned when more than 70% of the goal has been met (0% bonus at achievement of 70%), will be fully earned when 100% of the goal has been met, will end when more than 140% of the goal has been met (233,3% bonus at achievement of 140%).

Mr. Doucot earned but the Defendants have failed to remit payment for his earned but unpaid 2009 bonus under the Agreement's Plan Bonus.  See Complaint, ¶ 14.  The Defendants stated that they would provide Mr. Doucot with the calculation of the amount of his Plan Bonus in June, 2009.  Id.  However, the Defendants have failed to provide Mr. Doucot with either the calculation or the bonus itself.  Id.  Mr. Doucot has also earned but Defendants have not paid him for achieving one of the milestones listed in the Retention Plan 2010 bonus scheme.  Id. at ¶ 15. Under the Agreement, the bonus is earned if corporate revenue increases by €350,000 by 2010 over the 2006 revenue.  Id. & Ex. 1, Ex. B.  Mr. Doucot and the Defendants achieved this goal in 2007 by increasing IDS Scheer, Inc.'s revenue by €39.5 million in 2007.  Id.  Accordingly, pursuant to the formula stated in the plan, Mr. Doucot is owed at least approximately $350,000. Id.[2]  Additionally, Mr. Doucot is owed a prorated share of the "EBITA" and "Product Revenue" bonuses included within the Retention Plan 2010.  Id.  The Defendants have communicated in writing their refusal to compensate Mr. Doucot under the Retention Plan 2010.  Id.

On September 10, 2009, Mr. Doucot filed the Complaint, asserting claims for breach of contract for failure to pay the Plan Bonus and the Retention Plan 2010 bonus, attorneys' fees under the Agreement, and for violation of the Massachusetts Wage Act, M.G.L. c. 149, § 148.

---

[2]     Mr. Doucot may have already earned additional amounts under the Retention Plan 2010, but the financial information necessary to determine those amounts is in the hands of the Defendants.

<u>ARGUMENT</u>

"In considering a motion to dismiss, whether on the ground of lack of subject matter jurisdiction or for failure to state a claim, the complaint is construed in the light most favorable to the pleader and all allegations therein are taken as true." <u>Nollet v. Justices of the Trial Court</u>, 83 F. Supp. 2d 204, 207-208 (D. Mass. 2000), <u>aff'd</u>, 248 F.3d 1127 (1st Cir. 2000), <u>quoting</u>, <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974).  In order to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009), <u>quoting</u>, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  The general rules of pleadings require only a "'short and plain statement of the claim showing that the pleader is entitled to relief,'" which need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Gargano v. Liberty Int'l Underwriters</u>, 572 F.3d 45, 48-49, <u>quoting</u>, Fed. R. Civ. P. 8(a)(2) & <u>Twombly</u>, 550 U.S. at 555.  In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." <u>DiGiantommaso v. Globe Newspaper Co.</u>, 632 F. Supp. 2d 85, at *9 (1st Cir. 2009).

I.    <u>THE CLAIMS AGAINST IDS SCHEER, INC. SHOULD NOT BE DISMISSED AT
      THIS EARLY STAGE.</u>

In the Defendants' motion to dismiss, they allege that Mr. Doucot's claims against IDS Scheer, Inc. should be dismissed because that entity "no longer exists."  <u>See</u> Memorandum of Law in Support of Motion to Dismiss ("Memo") at p. 4.  However, it is premature to dismiss IDS Scheer, Inc. as a defendant at this stage of the proceedings, particularly where that entity entered into a contract with Mr. Doucot more than three years after it allegedly changed its name.

A party moving to dismiss bears a heavy burden.  General Elec. Co. v. Lyon, 894 F. Supp. 544, 548 (D. Mass. 1995).  "The appropriate inquiry is whether the non-mover is entitled to offer evidence in support of its claims."  Id.  The mere assertion that an entity no longer exists does not require the conclusion that it does not exist as a legal entity for the purpose of a law suit.  See Shanahan v. George B. Landers Constr. Co., 266 F.2d 400, 401 n.1 (1st Cir. 1959) (giving no legal significance to remark that corporation was dissolved because "even though dissolved the plaintiff corporation still exists as a legal entity for the purposes of this case.").

The Agreement, which is attached to the Complaint, states that it is with "IDS SCHEER, INC., a Delaware corporation with offices located at 1055 Westlakes Drive, Suite 100, Berwyn, Pennsylvania 19312 (the "*Company*")," and that it was made on October 27, 2006.  See Complaint, Ex. 1, p. 1.  The fact that IDS Scheer, Inc. contracted with Mr. Doucot more than three years after it allegedly changed its name, see Declaration of Courtney Worcester ("Worcester Aff."), Ex. A, indicates that IDS Scheer, Inc. was in fact conducting business under that name after 2003.  Therefore, Mr. Doucot should at least be entitled to discovery and an opportunity to submit evidence on the issue of the IDS Scheer, Inc.'s corporate status.

Furthermore, even if this Court accepts the Worcester Affidavit and the accompanying exhibits as matters of "public record," the Defendants have still fallen short of demonstrating as a matter of law that IDS Scheer, Inc. does not exist as a legal entity for the purpose of this action.  Under Delaware law,[3] "[a]ll corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct,

---

[3]      Defendant IDS Scheer, Inc. is a Delaware corporation.  See Complaint, ¶ 2.  Therefore, Delaware law applies to its internal affairs.  See Mariasch v. Gillette Co., 521 F.3d 68, 72 (1st Cir. 2008).

bodies corporation for the purpose of prosecuting and defendants suits…."  8 Del. Code § 278.

Therefore, the Defendants have not demonstrated that IDS Scheer, Inc. does not exist for the

purpose of this suit and that it should be dismissed from this action.

II.      THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE MR. DOUCOT
         HAS SUFFERED AN INJURY AND HIS CLAIMS ARE RIPE FOR ADJUDICATION.

         The Defendants contend that none of the claims asserted in the Complaint are ripe

because Mr. Doucot is not "suffering any present injury."  See Memo at p. 6.  However, the well-

pleaded allegations of the Complaint as well as the Affidavit of Charles M. Doucot ("Doucot

Aff."), submitted herewith,[4] demonstrate that Mr. Doucot has already suffered an injury based on

the Defendants' failure to pay him bonus payments that are currently owed to him – portions of

which were earned before and due as of the day of his discharge.  Furthermore, it is clear that

there would be severe hardship to Mr. Doucot if this Court declines consideration of his claims.

Therefore, this Complaint is ripe for adjudication.

         Jurisprudence on the ripeness doctrine is abundantly clear that the ripeness question only

arises when the injury alleged has not yet happened.  See NEGB, LLC v. Weinstein Co.

Holdings, LLC, 490 F. Supp. 2d 89, 94-95 (D. Mass. 2007) (stating that ripeness doctrine "asks

whether an injury that has not yet happened is sufficiently likely to happen to warrant judicial

review") (quoting, Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 205 [1st Cir.

2002]).  "The test to be applied in ripeness analysis is whether 'there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality….'"

McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003).  A party need not wait for

the "consummation of threatened injury" before seeking relief.  See Thomas v. Union Carbide

---

[4]      Although courts generally may not consider materials outside of the pleadings on a motion pursuant to Fed.
R. Civ. P. 12(b)(6), they may look to depositions or affidavits when reviewing a motion pursuant to Fed. R. Civ. P.
12(b)(1).  See NEGB, LLC v. Weinstein Co. Holdings, LLC, 490 F. Supp. 2d 89, 91. (D. Mass. 2007)

Agr. Prods., Co., 473 U.S. 568, 581 (1985).  It is enough for the injury to be certainly impending.
Id.  If a party seeks a remedy based on a future injury, a court  determines "whether the issue
presented is fit for judicial review" and evaluates "the extent to which withholding judgment will
impose hardship," which rests on whether the challenged action creates a "direct and immediate
dilemma" for the parties.  Stern v. United States Dist. Court for Dist. of Mass., 214 F.3d 4, 10
(1st Cir. 2000), cert. denied, 531 U.S. 1143 (2001), (internal quotations omitted).  "[A] very
strong showing on one axis may compensate for a relatively weak showing on the other."  Id.

As discussed in detail below, each claim asserted in the Complaint is based on an injury
that Mr. Doucot is already suffering – not a future injury.  Therefore, these claims are clearly fit
for judicial review.  Furthermore, Mr. Doucot would suffer great hardship if this Court withholds
judgment at this time, particularly in light of the pending sale of IDS Scheer AG, the Defendants'
parent company, which will not only entitle Mr. Doucot to additional payments pursuant to the
Retention Plan 2010, see Doucot Aff., ¶ 14, but will also make it more difficult for Mr. Doucot
to collect his bonus earnings from the Defendants.

In addition, the Defendants' argument that Mr. Doucot's claim for attorneys' fees is
"hopelessly premature" and does not state a claim, see Memo at pp. 9 & 13, clearly has no merit
in light of (1) the express language of the Agreement providing for attorneys' fees, see
Complaint, Ex. 1, § 15, (2) the well-accepted principle that claims not alleged in the complaint
are deemed waived, see, e.g., Calvi v. Knox County, 470 F.3d 422, 430 (1st Cir. 2006), and (3)
case law granting attorneys fees based on a count in a complaint, see C-B v. Board of Trs. of
Pioneer Valley Performing Arts Charter Sch., 539 F. Supp. 2d 474, 478, 488 (D. Mass. 2008).

A.      Substantive Law Governing Mr. Doucot's Claims

Because portions of Mr. Doucot's bonuses were earned prior to his termination, under
both Pennsylvania law, which governs his breach of contract claims, and Massachusetts law,

which governs his Massachusetts Wage Act claims, Mr. Doucot is currently suffering an injury

based on the Defendants' refusal to pay him these bonus payments.

1.     Pennsylvania Law Governing Breach of Contract Claims

Pennsylvania law governing the Agreement, see Complaint, Ex. 1 at § 11,

provides protections to employees seeking compensation for an employer's breach of contract.

See Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq. (the "PWPC");

Barsky v. Beasley Mezzanine Holdings, L.L.C., 2004 U.S. Dist. LEXIS 17166, at *6 (E.D. Pa.

Aug. 30, 2004) (holding that PWPC does not create right of compensation but that it provides

"additional protection" to employees bringing  breach of contract claims against employers).  In

particular, the PWPC provides that upon termination, an employee's "wages or compensation

earned shall become due and payable not later than the next regular payday of his employer on

which such wages would otherwise be due and payable."  See 43 P.S. § 260.5.  "Wages" are

defined by the PWPC to include "all earnings of an employe[sic], regardless of whether

determined on time, task, piece, commission or other method of calculation."  Id. at § 260.2a.

Pennsylvania common law also provides guidance to courts in interpreting terms of art in

employment contracts, including the term "earned."  An employee has "earned" a bonus where

the employee "renders sufficient services for contractual rights to vest."  See Riseman v.

Advanta Corp., 2001 U.S. Dist. LEXIS 15760, at *39 (E.D. Pa. Sept. 12, 2001) ("Riseman I"),

aff'd in relevant part, 39 Fed. Appx. 761 (3d Cir. July 8, 2002) ("Riseman II"), cert. denied, 537

U.S. 1190 (2003).  Therefore, when an employee is terminated before the end of the year of a

bonus plan, a jury may find that he or she has a "vested contractual entitlement to bonuses for

work already performed – not merely a contractual expectation to earn wages in the future."  Id.

Furthermore, under Pennsylvania law, a contract condition may be excused when a party

hinders the satisfaction of the condition.  In Riseman I, 2001 U.S. Dist. LEXIS, at *18, a jury

awarded an employee a bonus pursuant to a 1998 bonus plan despite the employee's termination

during 1998 and the employer's argument that the employee failed to "fulfill the contractual

condition requiring him to be employed" on March 31, 1999.  Id. at *14.  The court upheld the

jury's verdict, holding that the condition could have been excused by a finding that the employer

fired the plaintiff in order to prevent him from collecting his bonus.  Id. at *18.  "It is a principle

of fundamental justice that if a promisor is himself the cause of the failure of performance…of a

condition upon which his own liability depends, he cannot take advantage of the failure."  Id. at

*19, quoting, Anthuis v. Colt. Indus. Operating Corp., 971 F.2d 999, 1008 n.8 (3d Cir. 1999).

       2.       Massachusetts Law Governing Massachusetts Wage Act Claim

Under Massachusetts law, which governs Mr. Doucot's claim pursuant to the

Massachusetts Wage Act, wages are due to a discharged employee immediately upon

termination.  See M.G.L. c. 149, § 148 (providing that "any employee discharged from such

employment shall be paid in full on the day of his discharge").  In addition, the term "earned" is

defined for the purpose of the Massachusetts Wage Act to be based on work done by an

employee.  See Kittredge v. McNerney, 2004 Mass. Super. LEXIS 185, at *7 (May 11, 2004)

("The use of the word 'earned' in the [Massachusetts Wage Act] reflects that the work has been

performed, and therefore that prompt payment is due.").

       B.       Mr. Doucot Suffers Present Injury Based on Defendants' Refusal to Pay
                Bonuses Already Earned and Owed to Him Under Retention Plan 2010.

The Defendants contend that Mr. Doucot's claim for his Retention Plan 2010 Bonus is

unripe because it is "premised on uncertain events that may not occur at all."  See Memo at p. 8.

However, the language of the Retention Plan 2010 together with sworn statements of Mr. Doucot

in his affidavit clearly demonstrate that he had earned at least approximately $350,000 of his

Retention Plan 2010 bonus prior to his termination.  Under governing state law, this amount was

therefore due to Mr. Doucot on or about the date of his discharge, and he has already suffered an

injury for the purpose of both his breach of contract and Massachusetts Wage Act counts.

Pursuant to the Retention Plan 2010, as described in Exhibit B to the Agreement, the

bonus amounts earned by Mr. Doucot under the Retention Plan 2010 vested to him as follows:

> The allocated bonus base will begin to be earned when more than
> 70% of the goal has been met (0% bonus at achievement of 70%),
> will be fully earned when 100% of the goal has been met, will end
> when more than 140% of the goal has been met (233,3% bonus at
> achievement of 140%).

Complaint, Ex. 1 at Ex. B.  Therefore, the allocated Retention Plan 2010 bonus is earned, in part,

upon achievement of 70% of the relevant goal and, in full, upon achievement of more than 140%

of the relevant goal.  Id.  Once 100% of the goal has been met, the allocated bonus base is fully

earned, and the goal ends when more than 140% of the goal has been met, at which time Mr.

Doucot would be entitled to a 233.3% bonus.  Id.  The Retention Plan 2010 was explained to Mr.

Doucot by the Defendants prior to his acceptance of employment to act as an alternative to an

employee equity plan that would provide him with a vested interest in bonus payments in the

same way that an employee would obtain a stock grant or option.  See Doucot Aff., at ¶ 7.

Instead of using equity, the Defendants through the Retention Plan 2010 provided Mr. Doucot

with this compensation through a bonus.  Id.

The Corporate Revenue goal, which had an allocated value of 30%, is described by the

Retention Plan 2010 as "grow[ing] corporate revenue Euro 350k in 2010 over 2006 revenue."

Id., Ex. 1 at Ex. B.  Mr. Doucot worked toward this goal from the start of his employment in

December, 2006.  See Doucot Aff., ¶ 8.  By the end of 2007, Defendants' corporate revenue had

grown by €39.3 million and had reached €393.5 million.  See id. at ¶ 8 & Ex. 2.  Therefore, the

Corporate Revenue goal had been 140% met by the end of 2007 and the Corporate Revenue goal

ended.  Id.  Because the Corporate Revenue goal was allocated a 30% value out of a maximum

bonus of $500,000, achievement of 100% of the goal would have entitled Mr. Doucot to a $150,000 bonus.  Id.  Because 140% of the goal had been met by the close of 2007, Mr. Doucot was entitled to 233.3% of that amount, pursuant to the Retention Plan 2010, which amounted to $349,950.  Id.  Therefore, as of early 2008, when the Defendants announced its 2007 revenue to the public, Mr. Doucot had an earned and vested bonus in the amount of $349,950 under the Retention Plan 2010.  Id.; see also Complaint, ¶ 15; Riseman I, 2001 U.S. Dist. LEXIS 15760, at *38 (holding that employee has "vested contractual entitlement to bonuses for work already performed – not merely a contractual expectation to earn wages in the future").

The thrust of the Defendants' argument in the motion to dismiss is that the language of the Retention Plan 2010 precludes Mr. Doucot from "earning" his bonus until 2010.  However, as demonstrated above, the clear language of the Retention Plan 2010 bonus scheme indicates that the bonus begins to be "earned" as soon as 70% of the goal is met – and there is no language preventing this "earning" from beginning and ending prior to 2010.  The most that the Defendants can achieve through their argument that the Retention Plan "speaks of IDS Scheer AG meeting certain performance goals 'in 2010'" is to create an ambiguity in the Agreement, which would result in a factual dispute that must be resolved by the fact-finder.  See Community Coll. of Beaver County v. Community Coll. of Beaver County, Soc'y of Faculty, 375 A.2d 1267, 1275 (Pa. 1977) ("It has long been accepted in contract law than an ambiguous written instrument presents a question of fact for resolution by the finder-of-fact…").  Furthermore, even if it is ultimately found that the Agreement contains the condition that the Defendants read into it – which it does not – this Court would have the authority to excuse the performance of such a condition because it was the Defendants' termination of Mr. Doucot without cause that prevented him from being employed in 2010.  See Riseman I, 2001 U.S. Dist. LEXIS, at *18.

The only evidence submitted by the Defendants in support of their unsupported assertion that Mr. Doucot's claim under the Retention Plan 2010 is not ripe is the Declaration of Amy Goldberg ("Goldberg Aff."), which merely seeks to challenge the proposition that Mr. Doucot's bonus, even if earned, is already due from the Defendants by stating that "annual bonuses" are "traditionally paid to employees by the end of the first quarter following the close of the prior calendar year."  See Goldberg Aff., ¶ 4.  However, the way in which Defendants "traditionally" pay out bonuses to existing employees is entirely irrelevant to the issue of the Defendants' obligation to pay Mr. Doucot his earned bonus compensation upon his termination.  Indeed, the Agreement itself is clear that if Mr. Doucot was terminated without cause (which Defendants have not challenged), he was "entitled to receive all earned but unpaid (as of the effective date of such termination) Base Salary [and] pro-rated bonuses under Section 4(b) . . ."  See Complaint, ¶ 13 & Ex. 1 at § 7(d)(i).  Under Pennsylvania law, Mr. Doucot's earned compensation, including bonus payments, were due and payable by the date of his first regular payday after his discharge. See 43 P.S. § 260.5(a); Riseman II, 39 Fed. Appx. At 765 (holding that evidence and testimony at trial supported "conclusion that the 1998 Retention Bonus and the 1998 AMIP bonus could have been fully earned by Riseman prior to his termination, and that Advanta legally obligated itself to pay such bonuses to Riseman by the time of his termination").  Therefore, the Defendants' failure to pay Mr. Doucot the $349,950 due to him as of the first regular payday after Mr. Doucot's discharge resulted in a present injury that is justiciable in this Court.

Aside from the fact that the Defendants already owe Mr. Doucot at least approximately $350,000, there is also an active controversy between the parties as to whether Mr. Doucot is currently, or will ever be, entitled to additional payments under the Retention Plan 2010, and the implications of the pending sale of IDS Scheer AG, see Doucot Aff., ¶ 14.  Indeed, the Defendants have admitted that their position is that Mr. Doucot "can never earn a bonus under

the Retention Plan 2010 as his termination became effective on June 1, 2009, at which point he

ceased to be eligible to earn any such bonus." See Memo at pp. 12-13; Doucot Aff., ¶ 12.

Therefore, Mr. Doucot's claims under the Retention Plan 2010 create a direct and immediate

dilemma for the parties and a hardship for Mr. Doucot.

Furthermore, in addition to the justiciability of Mr. Doucot's breach of contract claim,

Defendants' failure to pay the bonus that Mr. Doucot earned prior to his termination, at least

$349,950, has resulted in a violation of the Massachusetts Wage Act – a claim that is also ripe

for adjudication. Indeed, under the Massachusetts Wage Act, Mr. Doucot's earned bonus was

due to him in full on the day of his discharge. See M.G.L. c. 149, § 148 (providing that "any

employee discharged from such employment shall be paid in full on the day of his discharge").

      C.      <u>Mr. Doucot Suffers Present Injury Based on Defendants' Refusal to Pay
Amounts Already Earned and Owed Pursuant to the 2009 Plan Bonus.</u>

Just as Mr. Doucot earned a portion of his Retention Plan 2010 bonus prior to his

termination, he also earned a portion of his 2009 Plan Bonus prior to his termination. Pursuant

to the terms of the Agreement and applicable state law, this amount is therefore already due to

Mr. Doucot and he has a current injury that merits judicial review.

The Agreement provides for the vesting of the Plan Bonus as follows:

> The allocated bonus base will begin to be earned when more than
> 70% of the goal has been met (0% bonus at achievement of 70%),
> will be fully earned when 100% of the goal has been met, will end
> when more than 130% of the goal has been met (200% bonus
> achievement at 130%)….

See Complaint, Ex. 1 at Ex. B. The 2009 Plan Bonus is not capped, and at 200% of all goals

met, the potential total bonus would be $420,000. See Doucot Aff., ¶ 9. Therefore, the allocated

2009 Plan Bonus is earned, in part, upon achievement of 70% of the relevant goal and, in full,

upon achievement of more than 130% of the relevant goal. Id. Once 100% of the goal has been

14

met, the allocated bonus base is fully earned, and the goal ends when more than 130% of the goal

has been met.  Id.  The specific goals of the 2009 Plan Bonus for Mr. Doucot are outlined on the

"Annual Bonus Payment 2009" page at the end of Exhibit 1 to the Complaint.

Although Mr. Doucot does not have access to information regarding the Defendants'

growth since his termination, it is clear that he is entitled to at least a portion of his Plan Bonus

because he earned 100% of the "Free Cash Flow Region North America" goal prior to his

termination.  See Doucot Aff., ¶ 11; Complaint, Ex. 1 at p. 13.  This allocated bonus base entitled

Mr. Doucot to a prorated portion of the $21,000 base allocation as of his termination.  See id.;

Complaint, ¶ 14 (alleging that Mr. Doucot earned but Defendants had not paid him unpaid 2009

compensation under the Plan Bonus).  See Riseman I, 2001 U.S. Dist. LEXIS 15760, at *38.  In

addition, Mr. Doucot believes based on his knowledge of the company's performance that the

other four goals under the 2009 Plan Bonus likely have already been either partially (70%) or

even more than 100% (up to 130%) achieved.  See Doucot Aff., ¶ 11.

Therefore, for the same reasons discussed above, see supra, Part II.B., Mr. Doucot is

suffering a current injury for the purpose of both his breach of contract claim and his

Massachusetts Wage Act claim based on the Defendants' failure to pay him the amount that he

earned prior to his termination pursuant to the Plan Bonus, and this claim is ripe for adjudication.

In addition, aside from the at least $21,000 base allocation owing to Mr. Doucot, it is

clear that his claims under the 2009 Plan Bonus over and above that amount are not based on

"uncertain and contingent events" that may never happen at all, and are therefore not the type of

claims that courts have dismissed as unripe.  The Defendants have conceded that Mr. Doucot

will be entitled to some amount due under the 2009 Plan Bonus.  See Goldberg Aff., ¶ 6 ("If,

after the close of calendar year 2009, it is determined that Mr. Doucot is eligible for a bonus,

such bonus would be calculated pursuant to the terms of his Executive Employment Agreement

and he would be paid his prorated bonus in the ordinary course in the first quarter of 2010.").

Therefore, there is an active controversy over the amount of money that Mr. Doucot is, and will

be, entitled to under the 2009 Plan Bonus.  Even according to the Defendants' position, the only

event that needs to happen in order to calculate the amount that Mr. Doucot is owed under the

2009 Plan Bonus is that the year 2009 year must end.  This event is neither uncertain nor

contingent and does not prevent this Court from exercising subject matter jurisdiction over Mr.

Doucot's claims.

III.    THE COMPLAINT STATES A CLAIM FOR RELIEF UNDER FED. R. CIV. P.
        12(b)(6).

The Defendants' argument pursuant to Fed. R. Civ. P. 12(b)(6), like their ripeness

argument, rests on the erroneous assumption that Mr. Doucot has not "earned" any portion of the

bonus payments provided under the Agreement, and that no payments are currently due to him.

However, reviewing the Complaint in the light most favorable to Mr. Doucot, it is clear that Mr.

Doucot has alleged sufficient facts to state "a plausible claim to relief" on all counts, and that the

Complaint gives defendant "fair notice" of his claim and the grounds upon which it rests.

A.    Counts I & II Validly State Claims for Breach of Contract Under
      Pennsylvania Law.

Because Counts I and II of the Complaint properly plead each of the elements necessary

for establishing breach of contract, Mr. Doucot has stated a claim under each of these counts.

Under Pennsylvania law, a cause of action for breach of contract is established by

pleading "(1) the existence of a contract, including its essential terms, (2) a breach of a duty

imposed by the contract and (3) resultant damages."  See Corestates Bank, N.A. v. Cutillo, 723

A.2d 1053, 1058 (Pa. Super. Ct. 1999).  A party claiming breach of contract must specifically

plead every element of a contract, but "not every term of a contract must always be stated in

complete detail."  See Snaith v. Snaith, 422 A.2d 1379, 1382 (Pa. Super. Ct. 1980).

The Complaint alleges the existence of a contract between Mr. Doucot and the Defendants, the Agreement.  <u>See</u> Complaint, ¶ 9 & Ex. 1.  It further alleges that the Defendants have breached the Agreement with respect to both the Plan Bonus and the Retention Plan 2010 by failing to provide Mr. Doucot with bonuses that he earned prior to his termination.  <u>See</u> <u>id.</u>, ¶¶ 14, 15, Ex. 1, § 7(d) & Ex. B; id., ¶¶ 20, 26.  The Complaint also alleges the amount of damages owed to Mr. Doucot based on this breach.  <u>See</u> <u>id.</u>, ¶¶ 14, 15.

The Defendants contend that the terms of the Agreement are unambiguous that the 2009 Plan Bonus could not be "earned" until the close of 2009 and that the Retention Plan 2010 bonus can never be earned because Mr. Doucot was terminated in 2009.  <u>See</u> Memo at p. 12.  However, pursuant to the clear language of the Agreement, both bonuses began "to be earned when more than 70% of the goal" was met, and could be fully earned and even end based on the percentage of the goal that was met.  <u>See</u> Complaint, Ex. 1 at Ex. B.  The Complaint's allegation that Mr. Doucot has earned portions of both of these bonuses must be taken as true for the purposes of a motion pursuant to Fed. R. Civ. P. 12(b)(6).  <u>See</u> <u>id.</u>, ¶¶ 14, 15.  The Defendants' attempt to restrict the meaning of the term "earned" under the Agreement based on the dates of employment is belied by the clear language of the Agreement (which includes a vesting schedule for earning of bonuses, <u>see</u> <u>id.</u>, Ex. 1 at Ex. B) as well as the governing case law.  <u>See</u> <u>Riseman I</u>, 2001 U.S. Dist. LEXIS at *39 (holding that employee has "vested contractual entitlement to bonuses for work already performed – not merely a contractual expectation to earn wages in the future").  Therefore, as discussed in Part II.B., the most that the Defendants can achieve by this argument is to create an ambiguity in the Agreement, which results in a factual dispute that must be resolved by the fact-finder.  <u>See</u> <u>Community College</u>, 375 A.3d at 1275.

Furthermore, even if it is found that the Agreement contains the condition that the Defendants read into it – which it does not – the performance of such a condition could be

excused because it was the Defendants' termination of Mr. Doucot without cause that prevented

him from being employed in 2010.  See Riseman I, 2001 U.S. Dist. LEXIS, at *18.  Therefore,

Counts I and II of the Complaint state a claim for breach of contract pursuant to the Agreement.

   B.   Count IV Validly States a Claim Under the Massachusetts Wage Act.

   Based on the well-pleaded allegations of the Complaint, it is clear that Mr. Doucot states

a claim that the Defendants violated the Massachusetts Wage Act by failing to pay him bonus

compensation that he earned during his employment by the date of his discharge.

   The Massachusetts Wage Act, M.G.L. c. 149, § 148, et seq. (the "Wage Act"), provides

that an employee may bring an action against an employer for failing to pay wages pursuant to

the terms of the statute.  See M.G.L. c. 149, § 150.  An employee who prevails in such action is

entitled to treble damages as liquidated damages for any lost wages and other benefits, as well as

costs and attorneys fees.  See id.  The Wage Act requires that any employee who is discharged

from employment must be "paid in full on the day of discharge" and expressly states that it

applies to the payment of commissions when the amount of such commissions "has been

definitely determined and has become due and payable to the employee."  Id. at § 148

   Here, the Complaint alleges, inter alia, that the Defendants are employers for the purpose

of the Wage Act, that Mr. Doucot has earned and is currently entitled to portions of his bonus

payments pursuant to the Agreement, that his bonuses and benefits are "wages" under the Wage

Act, and that Defendants' failure to remit payment of these wages to Mr. Doucot is a violation of

the Wage Act.  See Complaint, ¶¶ 14-15, 31-35.  The Agreement, which is attached to the

Complaint, supports Mr. Doucot's argument that his bonus payments were earned prior to his

termination.  See id. at Ex. 1, Ex. B (providing that bonus payments were earned upon

completion of 70% of each stated goal).  In addition, these payments are both "definitely

determined" in amounts that were specifically alleged in the Complaint.  See id., ¶ 14, 15, 24.
Therefore, Mr. Doucot has stated a claim for his unpaid bonuses pursuant to the Wage Act.

The Defendants' argument that Mr. Doucot's bonus payments are not the type of wages
that are covered by the Wage Act is both premature and unsupported by controlling
Massachusetts case law.  The Defendants fail to cite any case in their Memorandum in which a
court dismissed a Wage Act claim at the 12(b)(6) stage based on the holding that bonuses are not
covered by the Wage Act, or any decision of the Massachusetts Supreme Judicial Court or the
Massachusetts Appeals Court holding that bonuses are not covered by the Wage Act.  See, e.g.,
Baptista v. Abbey Healthcare Group, Inc., 1996 WL 33340740, at *4 (D. Mass. April 10, 1996)
(declining to extend the definition of "wages" to stock options); Navisite, Inc. v. Cloonan, 2005
WL 1528903, at *14 (Mass. Super. Ct. May 11, 2005) (entering summary judgment for
defendant on Wage Act count with respect to bonus payments in decision referring to numerous
documents outside of pleadings, including deposition testimony and documentary exhibits);
Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 605 (2003) (affirming
summary judgment for employer on Wage Act claim based on claim for severance pay).

Furthermore, the cases cited by the Defendants for the proposition that the Wage Act
does not apply to bonus payments are distinguishable from the case at hand in a material way –
unlike Mr. Doucot, the plaintiffs in those cases had not earned their bonus payments prior to
termination.  In the Navisite decision – the only case cited by the Defendants for this proposition
that in fact addresses a plaintiff's entitlement to a bonus, as opposed to stock options or
severance pay, see Memo at p. 14 – the court concluded that it was "not in a position to
determine" whether the plaintiff had met any of the goals upon which the retention bonus in
question was based or whether the company had met any of its corporate goals.  See Navisite,
2005 WL 1528902, at *12.  Similarly, the court stated that the record did not disclose any

mutually established objectives for the relevant quarter with respect to the performance bonus. Id. at *13.  Indeed, in a case cited by the Defendants in an earlier section of the Defendants' Memorandum, the Defendants explicitly hit on the material distinction between "earned" bonus payments and unearned bonus payments, stating that "[t]he 'Wage Act expressly states that it applies only to wages earned by the employee.'"  See Memo, p. 10, quoting, Huebsch v. Katahdin Indus., Inc., 2001 WL 716884, at *3 (Mass. Super. Ct. April 24, 2001); see also Huebsch, 2001 WL 716884, at * 3 (holding that plaintiff had not earned payments in question and therefore payments were not wages covered by Wage Act).  Therefore, the case law cited by the Defendants is inapt in the context of Mr. Doucot's claims under the Wage Act, where he and the Defendants had specific goals that were met prior to his termination and portions of his bonuses were therefore earned prior to his termination.

Therefore, Mr. Doucot's allegations under the Wage Act state a claim under Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

## REQUEST FOR ORAL ARGUMENT

Plaintiff requests oral argument on this Motion pursuant to Local Rule 7.1(D).

CHARLES M. DOUCOT,

By his attorneys,

/s/ Rachel E. Brodin   _____
Adrienne M. Markham (BBO# 320740)
Rachel E. Brodin (BBO# 666227)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Telephone:  (617) 482-1776
Facsimile:  (617) 574-4112

Dated:  October 19, 2009

<u>CERTIFICATION PURSUANT TO LOCAL RULE 5.2(b)</u>

As required by the Electronic Case Filing Administrative Procedures in effect in this District, I, Rachel E. Brodin, certify that this document, filed through the ECF system, will be sent electronically to the attorney of record for each party in this action, each of whom is a registered participant as identified on the Notice of Electronic Filing, this 19th day of October, 2009.

/s/ Rachel E. Brodin    _____
Rachel E. Brodin